**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,

CASE NO. 3:09-cr-397

v.

(JUDGE CAPUTO)

JASON HAYES,

Defendant.

## MEMORANDUM

Presently before the Court are various motions by Defendant Jason Hayes, including a motion to dismiss for failure to allege the essential elements of 18 U.S.C. §1519 (Doc. 67), a motion to dismiss because §1519 is unconstitutionally vague (Doc. 69), a motion for a bill of particulars (Doc. 61), a motion to compel disclosure of misconduct evidence (Doc. 57), a motion for disclosure pursuant to Federal Rule of Evidence 807 (Doc. 59), a motion for *Brady* material (Doc. 63), a motion for discovery and inspection (Doc. 65), a motion for early disclosure of *Jencks* material (Doc. 71), a motion to preserve and produce notes, reports and evidence (Doc. 93), a motion to preserve and produce tapes of law enforcement interviews (Doc. 104), a motion for notice pursuant to Federal Rule of Criminal Procedure 12(b) (Doc. 98), a motion for leave to file additional pretrial motions (Doc. 102), and a motion for individual voir dire and additional peremptory challenges (Doc. 106.)[1]  For the reasons discussed below, Defendant's motions will be granted in part and denied in part.

---

[1] Defendant also seeks to join in the motions and briefs of Co-Defendants Moyer and Nestor. Pursuant to *Local Rule 7.8* which forbids the incorporation of one brief into another and which mandates that a brief may address only one motion, this motion (Doc. 76) is denied.

**BACKGROUND**

On December 10, 2009, the Grand Jury charged Defendant Hayes with one count of conspiracy under 18 U.S.C. §371 and one count of falsification of records under 18 U.S.C. §1519. The Indictment ("Indict.") alleges the following:

On July 12, 2008 a group of six males, including, Derrick Donchack ("Donchack"), Brandon Piekarsky ("Piekarsky"), Participant # 1, and Participant # 2, assaulted L.R., a Latino Male, while members of the group yelled racial slurs. Specifically, the group yelled: "Spic," "Fucking Spic," "Go back to Mexico," and "Tell your Mexican friends to get the fuck out of Shenandoah." On July 14, 2008, as a result of the assault, L.R. died from blunt-force trauma to the head. (Indict. at 1, Doc. No. 1.)

At the time of the assault, Defendant Hayes was a patrolman for the Shenandoah Police Department, was dating the mother of Piekarsky, and knew the individuals involved in the assault. Defendant William Moyer, a lieutenant in the Shenandoah Police Department, has a son who, at the time of the assault, was a high school freshman on the same football team as the individuals who assaulted L.R. Defendant Matthew Nestor, Shenandoah Chief of Police at the time of the assault, was a friend of Piekarsky's mother and had vacationed with her. (Indict. at 2.)

Defendants Nestor, Moyer, and Hayes conspired in relation to and contemplation of a matter within United States jurisdiction to falsify police reports with the intention of impeding or influencing the investigation and administration of that United States matter. (Indict. at 3.) As part of the means, manner, and object of the conspiracy, Donchak, Piekarsky, Participant # 1, Participant # 2, and two others, Person # 1 and Person # 2, provided false statements to officials regarding the assault. Furthermore, Defendants Moyer,

2

Hayes, and Nestor intentionally failed to record inculpatory statements by Piekarsky and intentionally wrote false and misleading reports and false statements by those involved in the racially motivated assault. (Indict. at 3 - 4.)

In furtherance of the conspiracy, Defendants Moyer and Hayes detained Piekarsky, Donchak, Participant # 1, and others as they were fleeing the scene of the crime, and then released them despite the fact that Person # 3, a 911 caller, identified them as L.R.'s attackers. (Indict. at 4.) Following the assault, Piekarsky took Defendants Hayes and Moyer to the crime scene and told them about the assault. Afterwards, Piekarsky's mother, T.P., spoke to Defendant Hayes, and, while at Donchack's home told Piekarsky, Donchak, Participant # 1, Participant # 2, and others that Hayes said to "get their stories straight" because there could be a murder investigation. (Indict. at 5.) Prior to leaving Donchak's home, Donchak, Piekarsky, Participant # 1, Participant # 2, and others, created a false story which omitted the racial motivation for the assault. (Indict. at 6.) On July 13, 2008, Defendant Moyer went to Participant # 1's home to tell him to decide on a version of events to tell authorities. Between July 13 and July 16, 2008, Donchak, Participant # 1, Participant # 2, Person # 1, and Person # 2 gave false statements to police about the assault. *Id.*

Weeks following the assault, Defendant Moyer contacted the parents of Participant # 2, telling them to dispose of the sneakers worn on the night of the assault, and following this, Piekarsky and Donchak disposed of the sneakers they wore that night. (Indict. at 7.) On July 29, 2008, Defendant Hayes knowingly created a false report about the investigation of the assault. On or about August 1, 2008, Defendants Moyer and Hayes deliberately mischaracterized witness accounts in official reports to exculpate Piekarsky and falsely implicate Participant # 2, and Defendant Nestor reviewed and approved Hayes' report, which

3

Nestor knew to be false. On or about July 20 and August 1, 2008, Defendant Nestor knowingly created a false report about the assault. (Indict. at 7.) Defendant Moyer created two false reports, one soon after the assault, titled "Lt. William Moyer's Incident Report regarding Case # 125-424," and one on or about August 1, 2008, titled "Investigation of Kids Running from Homicide Scene." (Indict. at 8.)

Shortly before July 24, 2008, Defendant Moyer, knowing that Piekarsky was guilty in the assault, advised the parents of Participant # 2 that the Shenandoah Police Department did not intend to file serious charges, but the District Attorney had taken over the case and Participant # 2 should take full responsibility for the assault. On March 30, 2009, T.P. called the father of Participant # 1, referencing Participant # 1's cooperation with federal authorities. She told the father that Piekarsky would not get indicted if Participant # 1 did not testify against him. (Indict. at 8.) Defendant Moyer corruptly persuaded Participant # 1 to coordinate a story with the other assailants with the intention of hindering the investigation of a federal offense. (Indict. at 11.) Defendant Moyer, in relation to a matter under FBI jurisdiction, lied about Person # 3, a 911 caller, stating that Person # 3 said they saw a man with a gun when Person # 3 actually stated he saw the group of six boys assault L.R. (Indict. at 12.)

## DISCUSSION

## I. MOTION TO DISMISS FOR FAILURE TO ALLEGE A VIOLATION OF 18 U.S.C. §1519

Defendant is charged with one count of obstruction of justice under 18 U.S.C. §1519 and one count of conspiracy to violate §1519 under 18 U.S.C. §371. Chapter 73 of Title 18

of the United States Code deals with criminal liability for obstruction of justice.  §1519 of that

chapter provides:

> [w]hoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. §1519.  Defendant claims that the Indictment must be dismissed because §1519

requires a nexus between the alleged obstructive action and some matter within the

jurisdiction of the United States and that the Government has failed to sufficiently allege such

a nexus.

### A.    Nexus Requirement

Defendant claims that §1519 requires a nexus between the alleged act of obstructing

justice and a federal investigation.  Defendant relies on two United States Supreme Court

decisions which required such a nexus in   §§1503 and 1512(b)(2), both of which are

obstruction of justice statutes under Chapter 73.  Defendant claims that because of the

similarities between these statutes and §1519, the nexus requirement in those provisions

should be read into to §1519.

First, in *United States v. Aguilar*, the Court found that 18 U.S.C. §1503 requires a

nexus between an obstructive action and the administration of justice which it affects.  515

U.S. 593, 598-600 (1995).  Under §1503, anyone who "corruptly or by threats of force, or by

any threatening letter or communication, influences, obstructs, or impedes, or endeavors to

5

influence, obstruct, or impede the due administration of justice" is criminally liable. 18 U.S.C. §1503. This "omnibus clause" is a broad, catch-all provision attached at the end of §1503 and is designed to encompass acts not covered by earlier, more specific provisions in §1503. *Aguilar*, 515 U.S. at 598. It was under this general provision that the Aguilar was charged. *Id.*

In finding a nexus requirement in §1503, the Court looked to prior precedent which held that a person was not "sufficiently charged" with obstruction of justice unless that person "had notice that justice was being administered." *Id.* (quoting *Pettibone v. United States*, 148 U.S. 197, 207 (1893)). Viewing this precedent, the Court adopted a nexus requirement which had been imposed upon §1503 by some circuit courts; this requirement mandated that "the [obstructive] act must have a relationship in time, causation, or logic with the judicial proceedings" that the action was alleged to have obstructed. *See Aguilar*, 515 U.S. at 599 (citing *United States v. Wood*, 6 F.3d 692, 696 (10th Cir. 1993); *United States v. Walasek*, 527 F.2d 676, 679 (3d Cir. 1975)). This nexus requirement demands that the obstruction has the "'natural and probable effect' of interfering with the due administration of justice." *Id.* at 599 (quoting *Wood*, 6 F.3d at 695).

The Court read this nexus requirement into §1503 because the broad, catch-all provision could encompass innocent acts; absent a nexus between the act and the official proceeding, there is no "evil intent to obstruct" or criminal culpability which is normally associated with criminal prosecutions *Id.* at 599 (citing *Pettibone,* 148 U.S. at 207). Therefore, "if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding [the nexus], he lacks the requisite intent to obstruct." and is not properly charged

6

under §1503. *Id*. at 599.

Secondly, in *Arthur Anderson LLP v. United States*, the Court held that 18 U.S.C. §1512(b)(2) requires a nexus between threats and an official proceeding which those threats obstructed or could obstruct. 544 U.S. 696, 708 (2005). §1512 provides penalty for anyone who:

> knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to cause any person to: (A) withhold testimony, or withhold a record, document, or other object from an official proceeding or (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding.

18 U.S.C.A. §1512(b)(2). In finding a nexus requirement in §1512(b)(2), the Court focused specifically on the language "knowingly" and "corruptly persuades." *See Arthur Anderson*, 544 U.S. at 703-08. Joining together the terms knowledge, meaning "awareness, understanding, or consciousness," and corrupt, meaning "wrongful, immoral, depraved, or evil," the Court found that in order to be criminally culpable under §1512(b)(2), a person must be conscious of their wrongdoing. *Id*. at 706. The Court found that the parties must have had the specific intent to taint the official proceedings in order to meet this requirement. *See id.* While §1512 does not require a pending or ongoing proceeding in order to bring prosecution, the Court found that such a proceeding must actually have been foreseen or contemplated in order to foster the evil intent mandated by the "knowingly . . . corruptly persuade" language. *Id*. at 707-08. This requirement, the Court noted, is essentially the nexus mandated by *Aguilar*. *Id*. at 708.

7

The analysis of whether §1519 requires such a nexus begins with one sound principle: federal courts, in deference to Congress and in order to provide fair warning to the citizenry that its actions would be illegal under federal law, should exercise restraint in construing the reach of federal criminal statutes. *Aguilar*, 515 U.S. at 600 (citing *McBoyle v. United States*, 283 U.S. 25, 27 (1931); *Dowling v. United States*, 473 U.S. 207 (1985)); *Arthur Anderson*, 544 U.S. at 703. This ideal led the Court to require a nexus in §1503 and §1512(b)(2) prosecutions. *See id.* Without the requirement of a nexus, the public may not know that their actions are illegal because they would not be aware of the federal proceeding they were obstructing. *See id.* Restraint is "particularly appropriate . . . where the act underlying the conviction . . . is by itself innocuous." *Arthur Anderson*, 544 U.S. at 703. For instance, in *Arthur Anderson*, the statute at issue, §1512(b)(2), prohibited someone from persuading a person with intent to cause that person to withhold documents from the government. *Id.* at 704. Restraint was appropriate because this law could apply to a family member advising a loved one to invoke their Fifth Amendment rights or to a lawyer counseling a client to withhold documents covered by attorney client privilege. *Id.* Similarly, restraint is appropriate when interpreting §1519. §1519 forbids someone to "knowingly . . . conceal . . . any record . . . with intent to . . . obstruct . . . the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States." 18 U.S.C. §1519. This provision, like that at issue in *Arthur Anderson*, would seemingly apply to a lawyer advising a client to withhold privileged documents, a perfectly innocent activity. It would also apply to the family member advising a loved one to invoke their Fifth Amendment right from self incrimination. Because these legitimate actions could

8

be within the reach of §1519, restraint is required in interpreting this provision.

In light of this principle and established precedent, I find that the nexus requirement of *Aguilar* and *Arthur Anderson* should be applied to §1519. §1519 provides criminal liability for anyone who:

> knowingly alters, destroys, mutilates, conceals, or covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States ... or in relation to or contemplation of any such matter or case.

18 U.S.C.A. §1519. First, this statute, when read alongside §§ 1503 and §1512(b)(2), contains similar language to that which led the Court to read a nexus requirement into those statutes. All three of these statutes are found under Section 73 of the criminal code under the heading "Obstruction of Justice" and share a similar spirit. Each statute was enacted with language which broadened previous obstruction laws under Section 73. However with the broadening of the statutes, the Supreme Court, through *Aguilar* and *Arthur Anderson*, reigned in the statute through the nexus requirement. The language of §1519, like the "knowingly . . . corruptly persuades" language in §1512(b)(2), requires that the accused "knowingly" destroy or alter evidence with "intent" to affect a federal investigation or matter within United States jurisdiction. Each statute requires an action of obstruction of justice: obstructing justice by threat of force, altering evidence, or destroying evidence. Each statute also requires some sort of federal proceeding: the due administration of justice, an official proceeding, or any matter within the jurisdiction of any department or agency of the United States. While each statute encompasses different actions and different proceedings, the effect of each statute is the same. The action must be intended to affect the federal

proceeding covered in the statute.  This is the nexus that is required by *Aguilar* and *Arthur Anderson* and also by §1519.

Secondly, the policy underlying the nexus requirement of §§1503 and 1512(b)(2) requires that the nexus requirement be applied to §1519.  The nexus is required to maintain the culpable criminal mentality that is normally expected in criminal prosecutions.  The nexus mandate is precisely designed to restrain broad, catch-all provisions like that in §1519 from overreaching.  It is intended to ensure that ordinary citizens are put on notice as to whether or not the actions they commit are illegal or illegal.  In order for citizens to know whether their actions are illegal under §1519, they must be aware of the link, or nexus, between their actions and the matter which is under United States jurisdiction.  Absent this awareness, they cannot be said to have the culpable mind set required in criminal proceedings and under *Arthur Anderson*.  *See, e.g.*, *Arthur Anderson*, 544 U.S. at 703 - 04; *Aguilar*, 515 U.S. at 599 - 600.  Therefore, policy dictates that the nexus requirement imposed on §§1503 and 1512(b)(2) by *Aguilar* and *Arthur Anderson* also be demanded under §1519.

The Government argues that *Aguilar* and *Arthur Anderson* should not apply to §1519 because Congress intended for the statute to cover a broad range of actions not covered by existing obstruction of justice laws.  The argument focuses on a Senate Report pertaining to §1519 which states:

> Other provisions, such as [§1503], have been narrowly interpreted by courts, including the Supreme Court in [Aguilar] to apply only to situations where the obstruction [is] closely tied to a pending judicial proceeding ... the current laws regarding destruction of evidence are full of ambiguities and technical limitations that should be corrected. This provision is meant to accomplish those ends. Section 1519 is meant to apply broadly to any acts to destroy or fabricate physical evidence <u>so long as they are done with intent to obstruct, impede or influence the investigation or proper administration of any matter, and</u>

10

> such matter is within the jurisdiction of an agency of the United States, or such acts done either in relation to or in contemplation of such a matter or investigation ... It also extends to acts done in contemplation of such federal matters, so that the timing of the act in relation to the beginning of the matter or investigation is also not a bar to prosecution. The intent of the provision is simple; people should not be destroying, altering, or falsifying documents to obstruct any government function.

S. Rep. No. 146, 107th Cong., 2d Sess. 14-15 (2002) (emphasis added). The Government's argument is defeated by this very Senate Report. As the report makes clear, the defendant must have intended to affect the future investigation or contemplate that such a future investigation or proceeding may occur. *Id.* While the Senate did intend §1519 to be expansive and broaden the scope of previous obstruction statutes, the nexus requirement does not frustrate this purpose. Like §1519, §1512(b)(2), interpreted through *Arthur Anderson*, was intended to apply to federal proceedings that had not yet occurred or were not yet pending. 544 U.S. at 707-08. Despite this broad intent, the Court still required the nexus and the foreseeability of the proceeding. *Id.* at 708. Likewise, Congress' own words in §1519 "or in ... contemplation of" indicate that this nexus requirement exists in §1519.

The Government next contends that the *Arthur Anderson* analysis of §1512(b)(2) does not apply to the more broadly worded §1519. The Government claims that *Arthur Anderson* parses language such as "knowing," "corrupt," and "official proceedings," which is less broad than the language used in §1519 and therefore, that this analysis does not apply to the current matter. The language of §1519, while broader than that in §1512(b)(2), does not negate the *Arthur Anderson analysis.* §1519 uses the language "knowingly," which as in *Arthur Anderson* means "awareness, understanding, or consciousness." 544 U.S. at 706. *Arthur Anderson* focused on the word "corrupt," to describe the evil intent contemplated by

11

§1512(b)(2). While the Government is correct that "corruptly" is not found in §1519, this same evil intent is. §1519 applies to the intent to "impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States." 18 U.S.C. §1519. This language imposes upon the §1519 defendant the same sinister mentality which "corruptly" requires of a §1512(b)(2) defendant. This evil, coupled with "knowingly" mens rea, invites the analysis that the Court applied in *Arthur Anderson.* Furthermore, the fact that §1519 contains this all-encompassing, broad language, creates an even greater need for a nexus requirement. Without the requirement, the danger of both the lack of notice and criminalization of innocent actions which was contemplated by *Aguilar* and *Arthur Anderson* is present in §1519. Therefore, §1519 requires a nexus between the alleged obstruction and the matter within United States jurisdiction which the action is contemplated to obstruct.

**B.    Sufficiency of the Allegations**

Defendant contends that the Government has failed to allege a violation of §1519 for two distinct reasons. First, Defendant claims that the nexus requirement of §1519 is an element of the offense which must be alleged in the indictment and that because the Government has failed to allege such a nexus, the indictment must be dismissed. Secondly, Defendant argues that the Government has failed to allege that Defendant acted in contemplation of any matter within the jurisdiction of the United States under §1519 and that, therefore, the indictment must be dismissed.

**1.    *Whether the §1519 Nexus Requirement is an Element of the Offense Which Must Be Alleged in the Indictment***

The nexus requirement articulated in *Aguilar* and *Arthur Anderson* mandates a

"relationship in time, causation, or logic" between the alleged act of obstruction and the federal investigation or matter within United States jurisdiction which the act is contemplated to obstruct. *Aguilar*, 515 U.S. at 599 (citing *Wood*, 6 F.3d at 696; *Walasek*, 527 F.2d at 679). Furthermore, the act must have "'natural and probable effect' of interfering with" the investigation or matter within United States jurisdiction. *Id*. (citing *Wood*, 6.F.3d at 965).

Defendant claims that the Government has not sufficiently alleged the nexus between Defendant's conduct and a federal investigation or proceeding. Defendant claims that the Government has not alleged that Defendant either intended to affect a matter within United States jurisdiction or contemplated a future matter within United States jurisdiction when committing the obstructive act. Defendant claims that there are no allegations of knowledge of a racial motivation in the slaying of L.R. which would allow Defendant to foresee a federal prosecution or investigation. Defendant misreads the indictment and confuses the §1519 nexus requirement as an element of the offense that must be alleged in the indictment.

While *Aguilar* and *Arthur Anderson* require proof of a nexus in §1503 and §1512(b)(2) prosecutions, they do not mandate a nexus allegation in a criminal indictment; it is a factual determination appropriately left to the jury. *United States v. Triumph Capital Group, Inc.*, 260 F.Supp.2d 470, 475 (D. Conn. 2003) ("the nexus requirement must only be proved at trial"); *United States v. Black*, 469 F.Supp.2d 513, 543 (N.D. Ill. 2006) (finding that the nexus requirement of §1512(b)(2) need not be alleged in the indictment but is a factual question for the jury); *United States v. Ring*, 628 F.Supp.2d 195, 223-24 (D. D.C. 2009) (holding that the nexus requirement of §1512(c)(2), like that of §§1503 and 1512(b)(2), is a jury question and need not be alleged in the indictment); *United States v. Potts*, Crim. No. 07-85, 2007 WL

13

2219392, at 3 - 4 (D. Minn. 2007); *see also United States v. Gabriel*, 920 F.Supp. 498, 501 (S.D. N.Y. 1996) (noting that *Aguilar* does not require that a nexus be pleaded in the indictment). Because the nexus requirement of §1519 is derived from that instituted in *Aguilar* and *Arthur Anderson*, §1519 likewise does not require the nexus to be alleged at the indictment stage. *United States v. Russell*, 639 F.Supp.2d 226, 235 (D. Conn. 2007).

### 2. Whether the Government has Sufficiently Alleged a Violation of §1519

Rule 7(c)(1) requires an indictment to contain "a plain, concise, and written statement of the essential facts constituting the offense charged" and a statement of which statutes the defendant is alleged to have violated. Fed. R. Crim. P. 7(c)(1). Under Federal Rule of Criminal Procedure 12(b)(3)(B), motions claiming a defect in the indictment must be raised prior to trial. In ruling on a Rule 12(b)(3)(B) motion to dismiss, the court's role is not to determine the sufficiency of the evidence, but to determine whether the allegations in the indictment are sufficient to charge the named offense. *See United States v. DeLaurentis,* 230 F.3d 659, 661 (3d Cir. 2000) (citing *United States v. Sampson,* 371 U.S. 75, 78-79 (1962)). The trial court should consider only those objections "that are capable of determination without the trial of the general issue." *United States v. Carlos Alberto Diaz-Gomez*, No. CRIM. 88-484-1, 2000 WL 1868394, at *3 (E.D. Pa. 2000) (quoting *United States v. Donsky*, 825 F.2d 746, 751 (3d Cir. 1987)). Because a motion to dismiss should not be decided based on the weight of the evidence, the allegations in the indictment are assumed to be true. *See Diaz-Gomez*, 2000 WL 1868394, at * 3.

To determine the sufficiency of an indictment, courts utilize a two part test: (1) "whether the indictment contains the elements of the offense intended to be charged and

sufficiently apprises the defendant of what he must be prepared to meet, and (2) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Oliver*, No. 01-3223, 2002 WL 31474532, at *1 (3d Cir. 2002) (quoting *United States v. Hodge*, 211 F.3d 74, 76 (3d Cir. 2000)). "No greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *United States v. Bryant*, 556 F.Supp.2d 378, 383 - 84 (D. N.J. 2008) (quoting *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007)). In reviewing an indictment, a court should use "common sense" to determine "whether [a defendant's] conduct, as charged 'reflect[s] a proper interpretation of criminal activity under the relevant criminal statute.'" *Id.* at 384 (quoting *Hodge*, 211 F.3d at 76; *United States v. Delle Donna*, 552 F.Supp.2d 475, 483 (D. N.J. 2008)).

Defendant's indictment passes this two-part test. It sets out the elements of §1519, that Defendant: (1) knowingly (2) falsified documents (3) with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of an agency of the United States which was contemplated by Defendant. Moreover, the indictment is more than sufficient to place Defendant on notice of the charges which he must meet. It specifically sets out which police reports were falsified, the date on or about which they were falsified, and who prepared the falsified reports. It is also not open ended: the indictment alleges that the obstruction occurred between July 12, 2008 and May 30, 2009. This definite period helps to satisfy part two of the test because it highlights the specific conduct at issue. Finally, there is also no discretionary power given to those who apply the law.

Furthermore, the indictment sufficiently alleges that the falsification of these reports could have impeded a federal investigation. The indictment alleges that a group, including Piekarsky and Donchak, assaulted L.R. and that there was a racial motivation for the assault. It alleges that Defendants Moyer, Hayes, and Nestor participated in a conspiracy to impede a federal investigation. It alleges that Piekarsky told Defendants Hayes and Moyer about the assault and that Defendant Hayes, in furtherance of the conspiracy, told the assailants to get their stories straight. It alleges that as a result of this, Piekarsky, Donchak, and others omitted details about the racial motivation for the crime and that these details were in turn omitted from the police report. It alleges that Defendant Nestor knew that these reports were false and approved and filed them despite this knowledge. These allegations are more than sufficient to allege a violation of §1519 and to put Defendant on notice that these are the actions for which he is being charged. While not required to allege a nexus in the indictment, the Government has actually alleged one. It has alleged a "relationship in time, causation, or logic" between the falsification of documents and a potential federal proceeding which the falsification had the "natural and probable effect" of obstructing. Here, the relationship is logical. There is a logical relationship between the falsification of police reports to cover up a racial motivation for a murder and a future federal hate crimes prosecution. The falsification of the report has the probable effect of impeding such a prosecution.

This situation is analogous to one presented in *United States v. Hunt*, where Hunt, a police officer, falsified a police report in regards to excessive force used against a suspect. 526 F.3d 739, 741-42 (11th Cir. 2008). Hunt was prosecuted under §1519 evidence was presented which indicated that Hunt knew that claims of excessive force would be investigated by the FBI. *Id.* at 745. This evidence was used to establish that Hunt had

16

intended to obstruct a federal investigation. *Id.* While *Hunt* was a post conviction case, and this case deals with the sufficiency of the indictment, the rational underlying *Hunt* applies. The indictment in this case sufficiently alleges that Defendant knew of and covered up the racial motivation for the assault. This provides a nexus to a federal hate crime investigation. Like in *Hunt*, the Government can prove at trial that this investigation was foreseeable to and contemplated by Defendant at the time of the cover up because he knew that racially motivated crimes could be prosecuted by the federal government. It is unnecessary for the government to allege specific facts to show intent at this point in the proceedings; that is an issue which is appropriately left for trial. *Russell*, 639 F.Supp.2d at 237 (citing *United States v. Alfonso*, 143 F.3d 772, 777 (2d. Cir. 1998)). Therefore, the Government has sufficiently alleged a violation of §1519.

## II.   MOTION TO DISMISS BECAUSE 18 U.S.C. §1519 IS UNCONSTITUTIONALLY VAGUE

Defendant claims that §1519 is unconstitutionally vague because of its use of the phrase "in contemplation of . . . any investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States." In essence, Defendant's complaint goes to the breadth of the statute. A statute is unconstitutionally vague if it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application." *United States v. Fumo*, 628 F.Supp.2d 573, 596 (E.D. Pa. 2007) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). "Laws must 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly' and must 'provide explicit standards for those who apply them.'" *Id.* (quoting

*Grayned v. City of Rockford*, 408 U.S. 104, 108 - 09 (1972)). §1519 complies with this standard.

Specifically, §1519 is not vague as applied to the facts of this case. §1519 forbids (1) knowing (2) mak[ing] a false entry in any record (3) in contemplation of the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States. This forbidden conduct is precisely that with which Defendant is charged. The Government alleges that Defendant knowingly falsified the racial motivation for an assault in a police report in contemplation of a federal investigation. A person of ordinary intelligence would understand that as a police officer, it would be illegal under §1519 to falsify, in a police report, the racial motivation for an attack in order to impede a future federal hate crimes investigation.

Defendant claims that this connection is too attenuated, that it was simply not foreseeable for the Defendant to anticipate a hate crimes investigation which arose nearly a year and a half after the assault and after a state prosecution for the assault had already commenced and finished. The question of whether this link is too attenuated or whether the police officers actually contemplated a future federal investigation is a question of fact for the jury.

Furthermore, as several courts have pointed out, §1519 contains a scienter requirement which mitigates any vagueness that remains in the statute. *Fumo*, 628 F.Supp.2d at 598; *Russell*, 639 F.Supp.2d at 240 (noting that §1519's use of the mens rea "knowingly" creates a necessary consciousness of wrongdoing that "eliminates any statutory vagueness concerns). §1519 was sufficient to put these officers on notice that the actions alleged in the indictment were illegal, and therefore, it is not unconstitutionally vague.

18

### III. MOTION FOR BILL OF PARTICULARS

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the trial court may direct the filing of a bill of particulars. The decision to grant a bill of particulars lies within the discretion of the trial court. *See United States v. Armocida,* 515 F.2d 49, 54 (3d Cir. 1975), *cert. denied* 423 U.S. 858, 96 S.Ct. 111 (1975). The Third Circuit Court of Appeals has explained that "[t]he purpose of a bill of particulars is 'to inform the defendant of the nature of the charges brought against him, to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense.'" *United States v. Urban*, 404 F.3d 754, 771 (3d Cir. 2005) (quoting *United States v. Addonizio*, 451 F.2d 49, 63-64 (3d Cir. 1972)).

Although the Federal Rules of Criminal Procedure have been amended in order to "encourage a more liberal attitude by the courts toward bills of particulars," *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989) (quoting Fed. R. Crim. P. advisory cmte. notes to 1966 amendments), as a practical matter, when deciding whether to direct the government to file a bill of particulars the Court must assess whether the indictment fails "to provide factual or legal information," and whether that failure "significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *Rosa*, 891 F.2d at 1066*.

A bill of particulars is also designed to limit and define the government's case. *See United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985*)*. *"*As with an indictment, there can be no variance between the notice given in a bill of particulars and the evidence at trial." *Id.* Thus, the court must balance the defendant's need to know evidentiary-type facts in

order to adequately prepare a defense with the government's need to avoid prematurely disclosing evidentiary matters to the extent that it will be unduly confined in presenting its evidence at trial. *See United States v. Deerfield Specialty Papers, Inc.,* 501 F. Supp. 796, 809 (E.D. Pa. 1980). The defendant is not entitled to wholesale discovery of the government's evidence, nor to a list of the government's prospective witnesses. *Addonizio,* 451 F.2d at 64. Nor is a bill of particulars a vehicle to compel disclosure of the details of the government's theory of the case. *United States v. Tedesco*, 441 F. Supp. 1336, 1343 (M.D. Pa. 1977).

The Third Circuit Court of Appeals has emphasized that the need for a bill of particulars is obviated in cases where the Government supplements a detailed charging document with substantial discovery, *Urban*, 404 F.3d at 772, and that bills of particulars are "not intended to provide the defendant with the fruits of the government investigation." *Smith*, 776 F.2d at 1111 (citations omitted). Instead, unlike discovery, a bill of particulars is intended to give the defendant only "that minimum amount of information necessary to permit the defendant to conduct his *own* investigation," and not to provide the defendant with the fruit of the government's investigation. *Id.* (emphasis in original).

### A. Paragraph One, Count One

#### 1. Requests 1(a) and 1(b)

Count I of the indictment makes multiple references to persons only known to this Court and to Defendant as Participant # 1, Participant # 2, Person # 1, and Person # 2. Defendant asks that the Government be ordered to identify Participant # 1 and Participant # 2. Defendant is correct that these names are necessary to the preparation of an adequate

defense. Count I alleges a conspiracy between Defendants Nestor, Hayes, and Moyer to violate §1519. It alleges that the actions of Participants #1 and # 2, Persons # 1 and # 2, Donchak, and Piekarsky were part of the manner, means, and object of the conspiracy. While these individuals are not formally alleged as co-conspirators, it is clear from the allegations that they are at the very heart of the conspiracy. They are essentially co-conspirators in that they are alleged to have spoken with Defendants and in reaction to this conversation omitted information which allowed Defendants to cover up the racial motivation for the assault of L.R.

In determining whether to order disclosure of co-conspirators' identities, there are three interests at play: Defendant's interest in adequately preparing a defense and avoiding unfair surprise at trial, the Government's interest in adequately preparing its case for trial, and the privacy interests of the alleged co-conspirators. Disclosure of the names of co-conspirators whom the Government intends to call as witnesses at trial strikes the proper balance when weighing these interests. *MacFarlane*, 759 F.Supp. At 1169 - 70 (citing *United States v. Barrentine*, 591 F.2d 1069 (5th Cir. 1979)); *United States v. Degrasse*, 2003 WL 23277264, 1 (D. V.I. 2003); *Morris*, 2008 WL 5188826 at 1 (finding that because the court should only prevent unfair surprise for the defendant at trial, not limit the government's proof, disclosure of only those witnesses which the government intends to call at trail is appropriate). While the Government is not required to disclose the names of all those it intends to call a witnesses, these "participants" appear from the indictment to be more than ordinary witnesses: they are central to the indictment, and they are central to the conspiracy with which Defendant is charged. These individuals come close enough to being alleged as co-conspirators that they fall within this rationale for providing a bill of particulars. Without

21

knowledge of the identities of these individuals, it is unlikely that Defendant will be able to adequately prepare a defense for trial without the danger or prejudicial surprise. These individuals and their actions appear to be the link or nexus between Defendant's conduct and a federal investigation and are thus of the utmost importance to the case. Providing the names of these individual is not akin to providing unwarranted discovery; it is simply necessary for Defendant to begin the proper investigation needed to put on an adequate defense at trial. Therefore, Defendant's request for Particular 1(a) and Particular 1(b) will be granted.

### 2. Requests 1(c), 1(d), 1(e), 1(f), 1(g) and 1(h)

Defendant seeks the identities of the other individuals involved in the assault on L.R., the individuals who struck and/or kicked L.R., the individuals who yelled racial slurs at L.R., the individuals who fatally beat L.R., and other members involved in the conspiracy to assault L.R. Defendant also asks this court to order the Government to disclose which individual uttered which specific racial slur. Defendant is not entitled to general discovery in this criminal case nor is he entitled to a list of the Government's witnesses. Defendant now seeks information about the conspiracy to assault L.R. rather than the conspiracy alleged to have taken place in regards to the obstruction of justice by Defendant. This is discovery to which Defendant is not entitled, and therefore, Defendant's request for Particulars 1(c), 1(d), 1(e), 1(f), 1(g), and 1(h) will be denied.

### B. Paragraph Two, Count One

### 1. Request 2(a)

Defendant seeks the government to disclose which overt act or failure to act on March

22

30, 2009, marked the end of the alleged conspiracy.  This request is supplied by Count One, Paragraph Thirty-Three of the Indictment.  Defendant's request will be denied.

### 2.      Request 2(b)

Defendant requests the time, location, and manner in which each co-conspirator became a member of the conspiracy.  As discussed above, the Defendant will be notified of the identities of the alleged co-conspirators.  This is sufficient to allow him to prepare a defense in this matter.  Further disclosure as to the actions of the co-conspirators amounts to unwarranted discovery.  Therefore, Defendant's request will be denied.

### 3.      Request 2(c)

Defendant requests the other places in addition to Shenandoah, Pennsylvania where the conspiracy is alleged to have occurred.  I find this request to be reasonable.   Without knowledge of the location in which the overt acts of the conspiracy are alleged to have occurred, Defendant is not adequately on notice as to the specific acts for which he is charged, and there is a danger of unfair surprise at trial if the precise locations of the crimes are unknown.  Therefore, Defendant's request will be granted.

### 4.      Request 2(d)

Defendant seeks disclosure of the identities of unindicted and indicted co-conspirators in his case.  As discussed above, the disclosure of indicted and unindicted co-conspirators is proper if the Government intends to call such witnesses to testify at trial.  Therefore, to the extent that the Government intends to call other co-conspirators at trial, request 2(d) will be granted.

### 5. *Request 2(e)*

Defendant requests to be informed of the date, title, and author of the police reports which the three defendants allegedly conspired to falsify. This request is sufficiently supplied by Count One, Paragraphs Twenty-Five through Thirty-One of the Indictment. Defendant's request will be denied.

### 6. *Request 2(f)*

Defendant is alleged to have obstructed a matter within the jurisdiction of an agency of the United States. Defendant requests to know the exact date that the federal investigation into the death of L.R. began. Culpability under §1519 does not require an ongoing federal investigation; it simply requires that a federal matter be contemplated. The date that the federal investigation began is irrelevant to Defendant's contemplation of a such a proceeding. It is also superfluous discovery. Therefore, this request will be denied.

### 7. *Request 2(g)*

Defendant requests that the Government disclose the facts and circumstances which form the basis for Defendant's alleged contemplation of a federal investigation. This is not discovery. The indictment sufficiently alleges that Defendant falsified police reports in contemplation of a federal investigation. This is sufficient to put Defendant on notice of the charges against him. The Government is not required to show its hand at this time. Therefore, Defendant's request will be denied.

## C. Paragraph Three, Count One

Defendant requests the identities of Person # 1 and Person # 2 as well as any others known to the Grand Jury who provided false statements in relation to the death of L.R. As

discussed above, Person # 1 and Person # 2, like Participant # 1 and Participant # 2, are central to the indictment and the conspiracy. These persons nearly arise to the level of co-conspirators. For this reason, the identities of Person # 1 and Person # 2 must be disclosed. In requesting the identities of others who provided false statements, however, Defendant is exiting the realm of the conspiracy and searching for the names of all of the Government's potential witnesses. The request for these identities shall, therefore, be denied. Defendant's request will be granted in part and denied in part.

### D.    Paragraph Four, Count One

The indictment alleges that Piekarsky gave Defendants information about the attack on L.R. that Defendants failed to memorialize. Defendant seeks disclosure of the exact statements made and information as to when, where, and to whom the statements were made. These requests are sufficiently satisfied by Paragraph Nine of Count One of the indictment. This indicates the time, location, and recipients of Piekarsky's statements. The specific statements made are beyond the scope of a bill of particulars and are not necessary to put the Defendant on notice of the charges against him. It is sufficient that the Government alleges that the statements were made. Therefore, Defendant's requests will be denied.

### E.    Paragraph Five, Count One

Defendant requests the date, title, and author of each false and misleading police report that included false statements and omitted information. He requests that the Government identify the false statements and the information that was omitted. As previously discussed, the specifics of these reports need not be disclosed at this time. The

25

creation of these reports is sufficiently alleged in the indictment such that Defendant has ample notice as to the charges against him. Therefore, Defendant's requests will be denied.

**F.      Paragraph Six, Count One**

The indictment alleges that Defendant detained Person # 3, a 911 caller, who identified the individuals who assaulted L.R. Defendant seeks this person's identity as well as the exact time and location when he was detained. Person # 3 is not alleged to be involved in the conspiracy. He is, at most, a mere witness in the case, and Defendant is not permitted advance notification as to the identity of Government witnesses. Therefore, Defendant's request will be denied.

**G.      Paragraph Seven, Count One**

Defendant requests the identities of all others in addition to Piekarsky, Donchak, and Participant # 1 who were stopped as a result of the information given to police by Person # 3. Once again, Defendant is seeking the identities of Government witnesses to which he is not entitled. Defendant is not entitled to the fruits of the Government's investigation. He needs only enough information such as that he is put on notice to the charges against him and can begin his own investigation. Therefore, Defendant's request will be denied.

**H.      Paragraph Eight, Count One**

Defendant seeks disclosure of the names of the assailants and the others known to the grand jury who met at Donchak's home and the date and time of the meeting. Defendant is not entitled to a list of the Government's witnesses. The Government has sufficiently alleged a time frame and location for the meeting such that Defendant is on notice of the facts supporting the charges against him. Therefore, Defendant's request will be denied.

### I.    Paragraph Nine and Paragraph Ten, Count One

Once more, Defendant asks for the statements Piekarsky made to Defendants Hayes and Moyer about the attack on L.R. and the exact timing of these statements. For the reasons previously stated, these requests will be denied.

### K.    Paragraph Eleven, Count One

Defendant seeks the identities of other law enforcement officers, besides Defendant, who Piekarsky told about the assault, what Piekarsky told Defendant about the assault, and the identities of others known to the grand jury who agreed to give false statements to police. For the reasons stated above, this is unwarranted discovery, and Defendant's request will be denied.

### L.    Paragraph Twelve, Count One

The indictment alleges that T.P. told the assailants and others known to the Grand Jury that Defendant Hayes said that the co-conspirators in the assault on L.R. needed to get their stories straight. Defendant seeks the names of these assailants and conspirators. Defense is attempting to gain access to the Government's witnesses in advance of trial which is not permitted under a bill of particulars. The conspirators in Paragraph Twelve are not those in the conspiracy alleged in this indictment. The conspirators here refer to the conspiracy to assault L.R. Therefore, Defendant is not entitled to the identities of these conspirators, and Defendant's request will be denied.

### M.    Paragraph 13, Count One

Defendant requests the identity of the alleged official in the Borough of Shenandoah who advised Defendant Nestor to recuse the police department from the investigation into

27

the death of L.R. because of the suspects involved in the case and the time when this official allegedly made the recommendation.  Defendant is again on a fishing expedition to uncover the identities of witnesses to which he has no legal entitlement.  Therefore, Defendant's request will be denied.

**N.**   **Paragraph Fourteen, Paragraph Fifteen, and Paragraph SIxteen, Count One**

Defendant seeks the identities of others known to the Grand Jury who created a false version of events which omitted the detail about Piekarsky striking L.R and who met at Piekarsky's house to create a false version of events.  Defendant also seeks the identities of all others present at Piekarsky's home when Donchak discussed the disposal of sneakers worn an the night of the assault.  Because Defendant is not entitled to the Government's witness list, Defendant's request will be denied.

**O.**   **Paragraph Eighteen, Paragraph Nineteen, Paragraph Twenty, Paragraph Twenty-One, and Paragraph Twenty-Two, Count One**

The indictment alleges that various individuals gave false and misleading statements to the police department and other authorities involving the assault on L.R.  Defendant seeks the identities of the members of the police department and other authorities who received the statements and the content of the statements.  The indictment specifically alleges who gave the statements and the dates on which they were given. It alleges that these statements were false and misleading.  This is sufficient to put Defendant on notice as to the events in question.  Therefore, Defendant's request will be denied.

**P.**   **Paragraph Twenty-Five, Count One**

Defendant requests disclosure of the way in which Defendants Hayes and Moyer

28

mischaracterized eyewitness statements, what the alleged mischaracterization was, and the date, title, and author of the reports that were mischaracterized.  This is unwarranted discovery that is not necessary for the Defendant to prepare for trial.  The Defendant is aware that mischaracterization is alleged, and the reports in which it took place are sufficiently alleged in the indictment.  Therefore, Defendant is on notice of the charges, and his requests will be denied.

**Q.  Paragraph Twenty-Six, Paragraph Twenty-Seven, Paragraph Twenty-Eight, Paragraph Twenty-Nine, Paragraph Thirty, and Paragraph Thirty-One, Count One**

Defendant seeks the specific portions of the police reports noted in these Paragraphs which were false and misleading.  The allegations in the indictment sufficiently allege the offense in a manner that will allow Defendant to adequately prepare for trial and avoid unfair surprise.  Defendant asks this Court to order the Government to reveal precisely which reports are at issue and the specific statements in those reports which it alleges to be false.  This request is unwarranted.  The indictment alleges the specific dates on which each of the false police reports was created.  It alleges the approximate date on which Defendant reviewed and approved false reports.  It further alleges the subject matter of the reports and the investigation to which the reports pertained.  This is more than sufficient to allow Defendant to prepare for trial.  The reports are adequately specified such that it is highly unlikely that Defendant will be unfairly surprised with an unfamiliar police report at trial.  Therefore, Defendant's requests will be denied.

**R.  Count Two**

Defendant requests the locations, other than Shenandoah, where the alleged

offenses occurred, the identities of others involved with Defendants Nestor Hayes and Moyer in Count Two, the date, author, and title of official police reports which were falsified, the exact date the federal investigation into the death of L.R. began, and the facts and circumstances that formed a basis for Defendant to contemplate a federal investigation. These requests are identical to those made regarding Count One. Therefore, for the reasons stated above, Defendant's request for the locations other than Shenandoah where the offenses occurred will be granted and all other requests will be denied.

## IV.     MOTION TO COMPEL THE GOVERNMENT TO PROVIDE MISCONDUCT EVIDENCE

Federal Rule of Evidence 404(b) provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

F.R.E. 404(b). Defendant requests that the Government be ordered to provide early notice of such misconduct evidence that it intends to use at trial. The Government contends that any misconduct evidence that it will use at trial can be found in the "voluminous discovery" which it provided to Defendant. The Government maintains that it will provide notice of specifically which misconduct evidence it intends to use in advance of trial in such a manner that will provide time to conduct motions in limine and not delay the trial. Rule 404(b) does not create a specific time line for disclosure of misconduct evidence. *See id.* I find the Government's time line to be reasonable, and will, therefore, deny Defendant's motion.

Defendant also seeks notice of evidence which the Government intends to present under Federal Rule of Evidence 609. Rule 609 requires advance notice of the intent to use evidence of misconduct which is more than ten years old. *See* F.R.E. 609. The Government claims that it knows of no such evidence which it could use against Defendant. Furthermore, because Defendant has not yet disclosed its witness list to the Government, the Government cannot know if it intends to impeach any of Defendant's witnesses with Rule 609 evidence. Therefore, Defendant's motion will be denied.

## V. MOTION FOR DISCLOSURE PURSUANT TO FEDERAL RULE OF EVIDENCE 807

Defendant seeks disclosure of evidence falling under Federal Rule of Evidence 807 which the Government intends to use at trial. Rule 807 provides for the admission of residual hearsay evidence, not admissible under rules 803 and 804, but which has sufficient "guarantees of trustworthiness" and passes a specified three prong test for admission. F.R.E. 807. The Government, however, claims that it does not foresee using such evidence at trial. Therefore, Defendant's motion will be denied.

## VI. MOTION FOR RELEASE OF BRADY MATERIALS

There is no constitutional right to discovery in a criminal case. *United States v. Mariani*, 7 F.Supp.2d 556, 561 (M.D. Pa. 1998) (Vanaskie, J.) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)). However, some evidence, courts have reasoned, must be disclosed to protect defendants' due process rights. For instance evidence which is both exculpatory and material must be disclosed by the government. *Id.* (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *United States v. Higgs*, 713 F.2d 39, 42 (3d Cir. 1983)). Exculpatory evidence is evidence which "goes to the heart of the defendant's guilt or

innocence as well as that which might alter the jury's judgment of the credibility of a crucial prosecution witness." *Giglio v. United States*, 405 U.S. 150, 154 (1972). Exculpatory evidence should be found to be material if it raises reasonable doubt as to the defendant's guilt. *United States v. Agurs*, 427 U.S. 97, 112 (1976). It is within the discretion of the trial court to order pretrial disclosure of Brady and Giglio material. *Higgs*, 713 F.2d at 44 n.6.

*Brady* did not create a right to discovery; it placed a duty upon prosecutors to disclose material that is both exculpatory and material. *United States v. Rodriguez*, Criminal Action No. 07-709-01, 2008 WL 4925010, *2 - 3 (E.D. Pa. 2008) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Bagley*, 473 U.S. 667, 682 (1985)). When a Defendant merely makes a general *Brady* request, it is in the Government's discretion whether to disclose its information. *Id.* (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987)). To obtain even an in camera inspection of evidence, a defendant must allege that the prosecution has withheld *Brady* evidence and "must at least make a 'plausible showing' that the inspection will reveal material evidence." *Id.* (quoting *Ritchie*, 480 U.S. at 59 - 60); *see also United States v. Dent* 149 F.3d 180, 191 (3d Cir. 1998); *Riley v. Taylor*, 277 F.3d 261, 301 (3d Cir. 2001).

Defendant seeks a list of forty-five pieces of Brady material. Defendant does no more than make general requests for *Brady* information. He does not make a showing that the information he requests is material to the matter at hand. Because of the general nature of Defendant's requests, it is within the discretion of the Government to disclose the information. The Government acknowledges its duty to turn over Brady material and insists that it does not have any such material in its possession. It contends that should such

32

information come into its possession, it will provide Defendant with such material. Because the Government denies the existence of any further Brady information, Defendant's motion will be denied. *See United States v. Goggins*, Criminal No. 07-441, 2009 WL 275557, *1 - 2 (W.D. Pa. 2009) (denying a motion for Brady material where the Government indicated that such material was not in its possession).

Defendant seeks any further evidence affecting the credibility of Government witnesses. While this evidence must be turned over prior to trial, *Giglio v. United States*, 405 U.S. 105 (1979), this motion is premature. Impeachment evidence may be disclosed to the defense as late as the day that the witness will testify in court. *United States v. Higgs*, 713 F.2d 39, 44 (1983). The Government claims that it intends to turn this information over to the defense three days prior to trial. This schedule is sufficient, and therefore, Defendant's motion for disclosure of impeachment evidence will be denied.

## VII. MOTION FOR DISCOVERY AND INSPECTION

Defendant seeks discovery to which he is not entitled under Federal Rule of Criminal Procedure Rule 16. Defendant has been provided with "[o]ver 2,300 pages of discovery . . . including 1,160 pages of state trial transcript and 250 pages of state preliminary hearing transcript . . . 6 compact discs containing jail cell recordings, 911 recordings, transcripts, Schuylkill County District Attorney and Shenandoah Police Department reports, complaint reports, pictures of defendants, pictures of crime scene, autopsy pictures and reports, medical reports, and police training documents - in short, thousands of pages containing hundreds of documents, photographs and related materials." (Gov. Br. in Opp., Doc. 132, at 4 - 5.) Discovery in criminal cases is severely limited by Rule 16, and Defendant has

received over 2,300 pages of discovery.  The Government maintains that it has complied with Rule 16 and will continue to comply with Rule 16 should an further evidence come into its possession.  Therefore, Defendant's motion will be denied.

## VIII.  MOTION FOR EARLY DISCLOSURE OF JENCKS MATERIAL

Defendant seeks early production of material under the Jencks Act, 18 U.S.C. §3500. This request runs contrary to established Third Circuit precedent.  The Jencks Act requires production of prior witness statements pertaining to the subject matter of their testimony after such witness has testified on direct examination at trial. 18 U.S.C. §3500.  The Government has indicated its willingness to provide this material sooner: three days prior to trial.  It is not within the power of the District Courts to accelerate this timetable.  *United States v. D'Elia*, No. 3:CR-06-191, 2007 WL2458487, *7 (M.D. Pa. 2007) (citing *United States v. Murphy*, 569 F.2d 771, 773 (3d Cir. 1978) ("[t]he blunt command of the statute together with the unequivocal legislative history has lead to unbroken precedent in the Courts of Appeals denying to District Courts the power to compel production of the statements of government witnesses until conclusion of their direct examination at the trial.")) Therefore, Defendant's motion for early production of Jencks material will be denied.

## IX.  MOTION TO INSPECT GRAND JURY MINUTES

Defendant requests various records from the grand jury stage of his criminal proceeding.  Courts do not allow inspection of Grand Jury minutes based on conjecture or unsupported accusations; factual support is required to inspect Grand Jury proceedings which are protected by a "strong presumption of regularity."  *United States v. Bunty*, 617 F.Supp.2d 359, 372 (E.D. Pa. 2008) (citing *United States v. Shane*, 584 F.Supp. 364, 367

(E.D. Pa. 1984); *United States v. Nguyen*, 314 F.Supp.2d 612, 615 (E.D. Va. 2004)). In order to warrant even an *in camera* inspection of Grand Jury minutes, a defendant must show "particularized and factually based grounds . . . to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment." *Id.* (quoting *Nguyen*, 314 F.Supp.2d at 616). Defendant provides numerous reasons as to why a defendant in general would require access to Grand Jury minutes. These reasons, however, would apply to a defendant in any criminal matter. Defendant has failed to show any need that is particularized to his case. Defendant has not provided any facts specific to his case to indicate why inspection of the Grand Jury minutes is necessary here. Therefore, Defendant's motion will be denied.

**X. MOTION TO PRESERVE AND PRODUCE NOTES, REPORTS, AND EVIDENCE and MOTION TO PRESERVE AND PRODUCE TAPES OF LAW ENFORCEMENT OFFICERS**

Defendant requests preservation and production of all notes, reports, and evidence created by the agencies investigating his case. The Government is aware of and accepts its responsibility to preserve all of this material. To that extent, Defendant's request for preservation will be granted as unopposed. The Government does, however, oppose Defendant's request for production. The Government acknowledges its duty to produce, however, it is opposed to producing the documents at this time. The Government intends to product the documents three days in advance of trial. As discussed above, Jencks Act material is not required or warranted in this case until trial. As the Government intends to produce such material three days in advance of this mandate, Defendant's motion to produce will be denied.

Defendant also seeks preservation and production of any tape recordings or interviews taken by any law enforcement or investigative agency involved in this case, any state or federal agencies involved in the investigation of this case, and any co-conspirators or co-defendants of Defendant. Once again, the Government recognizes its duty to preserve these materials. These materials will be turned over to Defendant within the time line mandated by *Jencks*. Therefore, Defendant's motion to preserve will be granted and Defendant's motion to produce will be denied.

## XI.  MOTION FOR NOTICE PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)

Under Federal Rule of Criminal Procedure 12(b), a defendant may request notice of the Government's intent to use evidence that the defendant may receive as discovery under Rule 16 so long as that evidence is related to the defendant's motion to suppress. Fed. R. Crim. P. 12(b)(4)(B). The Government contends that it has reviewed its files and turned over all evidence required under Rule 16 and that it will continue to do so should any further evidence arise. Pursuant to Rule 12(b) and in the interest of fostering a speedy and efficient trial and motions process, the Government will be ordered to provide Defendant with notice as to which pieces of this evidence falling under Rule 16 discovery that it intends to use at trial.

## XII.  MOTION FOR LEAVE TO FILE ADDITIONAL PRETRIAL MOTIONS

Defendant seeks leave to file additional pretrial motions. Under Federal Rule of Criminal Procedure 12(e), a defendant may receive leave to file additional pretrial motions beyond the deadline set by the District Court. Fed. R. Crim. P. 12(e). While the Government does not specifically oppose Defendant's motion, in order to receive such leave, Defendant

must show good cause.  *Id.*  The only good cause Defendant has shown is that he has yet to receive portions of discovery and that this discovery may lead to information necessitating further pretrial motions.  Therefore, Defendant will be granted leave to file additional pretrial motions, but only to the extent that such motions arise from discovery authorized in this opinion.

## XIII.  MOTION FOR INDIVIDUAL VOIR DIRE AND ADDITIONAL PEREMPTORY CHALLENGES

Defendant moves this Court to grant each Defendant an additional number of peremptory challenges.  He also moves for individual voir dire.  This is not Defendant's only request for individual voir dire.  *See* (Doc. 126.)  Defendant's request for individual voir dire will be deferred and will be addressed at a later date in this Court's response to Defendant's second motion (Doc. 126).

Federal Rule of Criminal Procedure 24 governs the exercise of peremptory challenges. Generally, a defendant in a non-felony capital case is entitled to ten peremptory challenges. Fed. R. Crim. P. 24.  It is within the discretion of the district court to grant additional peremptory challenges where there are multiple defendants.  Fed. R. Crim. P. 24(b). Defendant claims that each defendant should be given ten peremptory challenges. Defendant's bases for requesting additional peremptory challenges are the nature and complexity of the case, the severity of the penalties in this case, and the vast amount of pretrial publicity in the matter.  This is not enough to warrant additional peremptory challenges in this case.

Peremptory challenges are not the appropriate remedy for excessive pretrial publicity. Should this court find a remedy is needed for excessive publicity in this case, it will address

it when ruling on Defendant's motion for individual voir dire, juror questionnaire, and district-wide venire (Doc. 126), which will address the issue of pretrial publicity.

Were this Court to provide Defendants with the requested number of ten peremptory challenges per defendant, the Government would be unfairly disadvantaged at trial. The Court would be forced to proportionally increase the Government's number of peremptory challenges from six to eighteen to compensate for this tactical disadvantage. This would increase the number of peremptory challenges in this case from sixteen to forty-eight and create an excessively long and inefficient jury selection process that could adversely impact the ability to empanel a jury. Therefore, Defendant's motion for additional peremptory challenges will be denied.

## CONCLUSION

For the reasons stated above, Defendant's motions will be granted in part and denied in part.


  July 7, 2010                                    /s/ A. Richard Caputo
Date                                               A. Richard Caputo
                                                   United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,

NO. 3:09-cr-397

v.

(JUDGE CAPUTO)

JASON HAYES,

Defendant.

---

## ORDER

**NOW**, this __7th__ day of July, 2010, **IT IS HEREBY ORDERED THAT:**

1.   Defendant's Motion to Dismiss (Doc. 67) is **DENIED**.

2.   Defendant's Motion to Dismiss (Doc. 69) is **DENIED**.

3.   Defendant's Motion for a Bill of Particulars (Doc. 61) is **GRANTED IN PART**, and **DENIED IN PART** as follows:

   (a)   The Government is ordered to disclose the identities of Participant # 1 and Participant # 2.

   (b)   The Government is ordered to disclose the locations, other than Shenandoah, Pennsylvania where the overt acts of the alleged conspiracy are alleged to have occurred.

   (c)   The Government is ordered to disclose the identities of all indicted and unindicted co-conspirators that it intends to call as witnesses at trial.

   (d)   The Government is ordered to disclose the identities of Person # 1 and Person # 2.

   (e)   Defendant's other requests for particulars are **DENIED**.

4.   Defendant's Motion to Compel (Doc. 57) is **DENIED**.

5.   Defendant's Motion for Disclosure pursuant to Rule 807 (Doc. 59) is **DENIED**.

6.    Defendant's Motion for Release of Brady Documents (Doc. 63) is **DENIED**.

7.    Defendant's Motion for Discovery and Inspection (Doc. 65) is **DENIED**.

8.    Defendant's Motion for Early Disclosure of Jencks Material (Doc. 71) is **DENIED**.

9.    Defendant's Motion to Inspect Grand Jury Minutes (Doc. 73) is **DENIED**.

10.   Defendant's Motion to Preserve and Produce Notes, Reports, and Evidence (Doc. 93) and Motion to Preserve and Produce Tapes (Doc. 104) are **GRANTED IN PART**, and **DENIED IN PART** as follows:

      (a)    Defendant's motions to preserve are **GRANTED** as unopposed.

      (b)    Defendant's motions to produce are **DENIED**.

11.   Defendant's Motion for Notice Pursuant to Rule 12(b) (Doc. 98) is **GRANTED**.

12.   Defendant's Motion for Leave to File Additional Pretrial Motions (Doc. 102) is **GRANTED** to the extent that such further motions arise from discovery approved in this opinion.  Leave to file other additional pretrial motions is **DENIED**.

13.   Defendant's Motion for Individual Voir Dire and Additional Peremptory Challenges (Doc. 106) is **DEFERRED IN PART** and **DENIED IN PART** as follows:

      (a)    Defendant's Motion for Individual Voir Dire is **DEFERRED**.

      (b)    Defendant's Motion for Additional Peremptory Challenges is **DENIED**.


/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge